CAYUGA COUNTY.—HON. J. D. TELLER, SURROGATE.—

March, 1884.

SMITH v. SMITH.

*In the matter of the general guardianship of* MELITA WILLIAMS *and* LAURA CHEDELL WILLIAMS, *infants.*

In designating a guardian of an infant's person, the interest of the infant

is to be considered by the court, in preference to the wishes of those who are desirous of the office.

The expression, during life, by the father or mother, since deceased, of an infant, of a wish as to the guardianship of its person, should, *ceteris paribus,* have a preponderating influence on the Surrogate, in making an appointment.

An uncle or aunt of an orphan is, in general, to be preferred, as guardian of its person, to a more remote relation or a stranger.

Where application was made for the appointment of a guardian of the persons of two orphan female infants, aged four and five years, respectively, the court made it a condition of appointing their aunt, that they should continue to reside at the paternal home—this appearing to be in accordance with the parents' wishes—and under the care of one who, by the choice of the latter, had always been their nurse.

PETITIONS by Goldsborough Smith, a cousin, and Jennie A. Smith, an aunt, of Melita Williams and Laura C. Williams, infants aged, respectively, four and five years, for the appointment of a general guardian of the persons of those infants. The facts appear sufficiently in the opinion.

R. C. STEEL, *for petitioner, G. Smith.*

F. P. TABER, *opposed.*

THE SURROGATE.—This is an application on the part of Goldsborough Smith, a cousin of the above named infants, in separate proceedings, for the appointment of a guardian of the persons of said infants.

Petitions have also been filed by Mrs. Jennie A. Smith a sister of their father, for her appointment as such guardian. By consent of parties, the proceedings have been consolidated, and evidence has been taken and arguments of counsel heard by this court, with a view of determining who will be the most suitable appointee.

The statute provides for the appointment, upon a petition of a relative, of a guardian of the person, or of

the property, or both, of an infant, to serve until the infant attains the age of fourteen years and a successor of the guardian is appointed.    The said infants, who have recently, by the sudden death of their father, become orphans, are grandchildren of Gen. John H. Chedell, a prominent citizen of Auburn, who departed this life a few years since, leaving a will, by which he bequeathed a large property to his grandchildren, two of whom are the said infants, aged respectively four and five years, one is the petitioner Goldsborough Smith, and the other four have by marriage of parents become members of the same family with said petitioner.    As to the greater part of this property, the bequests in said will are contingent upon the grandchildren respectively arriving at their majorities, and, in case of the death before that time of any one of them, the share of such, including accumulation of interest, goes into a general fund, to be divided among the survivors.

The evidence upon this proceeding shows that there had existed unfriendly relations between the parents of these infants, and the other grandchildren and their parents, and a desire is shown to have been expressed, on the part of both parents of these infants, that they should not be committed to the care of the parents of the other grandchildren, and also that their home should be continued at the homestead of the grandparents, lately the residence and property of their father.  The evidence also shows that Mrs. Jennie A. Smith, the sister of Mr. Williams, deceased, had not seen her brother in many years, and had only known him by means of a brief correspondence, commencing a short time before his death, but of a character indicating much affection between them.  She

has for a number of years resided in Canton, in this State, and is shown to be a very suitable person to have the care and control of the nieces. The brother of the deceased unites in the petition for her appointment. She has shown her willingness to change her residence to Auburn, and has consented, if appointed guardian, to retain in her present capacity the woman who has, by choice of their father and mother, from their birth been the nurse and for several years almost a mother to these children, such employment to continue as long as this court may direct. In deciding upon these applications, the court has sought aid in the decisions and dicta of courts of chancery in similar cases, and finds the following rules laid down for its guidance:

In making an appointment of guardian for an infant, the true interest of the infant is to be considered, rather than the wishes of those who are desirous of the guardianship. The expressed wish of the mother or father of an infant should have a preponderating influence upon the Surrogate, other things being equal. Such a wish as to the manner in which a child should be brought up is entitled to much weight. As between an uncle or aunt and a stranger or person more remotely related, the uncle or aunt should be preferred. The permanent interest, welfare and happiness of the infant is to be promoted rather than the accumulation of a surplus, where the income of the property is ample; and the giving of the guardianship to one who would have a personal contingent interest in such accumulation, conflicting with appropriate expenditures, should be considered.

The statute has designated the general guardian of a child as the proper administrator of the estate of a de-

ceased parent, and the possibilities growing out of these relations may suggest certain proprieties. The application by the first named petitioner does not name a person who is desired for this appointment, but evidence given points to the stepmother of the petitioner as the desired custodian. She is of no consanguinity with the infants, and, while the petitioner himself is related, on account of his youth and inexperience, it can hardly be claimed that his appointment would be suitable.

From a full consideration of the case, in view of the established law, the circumstances of all parties, the desirability that the children should be continued and nurtured in their present suitable home, under the care of their nearest relatives, with the assistance of the nurse who was their parent's choice, and desiring particularly to make such a disposition of their management as their parents would approve, who could have done the same by will had not the mysterious messenger come so suddenly, I am constrained and compelled to name, as in my judgment the proper appointee, Mrs. Jennie A. Smith, upon her filing a consent to act, and an agreement that the children of her brother shall be permitted to continue to reside at the family home, under the care of their present nurse, and upon filing a bond for the faithful discharge of her duties in the penalty of $10,000.

The interest manifested in this case has evidenced much affection for the children, and it is to be hoped that the regard shown by cousins and relatives as well as the general public, will find continued expression in acts of kindness and love. I am impelled to add that the disposition of this case has led to the conclusion that the impression is very general that the decisions of

this court are matters of favor to be dealt out upon grounds of personal friendship. Numerous whispered entreaties have been offered, all of which I trust have been duly disregarded. It is difficult to overcome the impulse to discourage any unfair attempts to influence the court by acting counter to the desired course. I hope the temptation may not be continued in other cases.

In the matter of the appointment of a guardian of the property of these infants, I am inclined to the opinion that a citation ought to issue to certain relatives in the county, and no appointment will be made until an opportunity to be heard is offered. I find an authority in this respect, which seems controlling, in Rickard's case, reported in 15 Abb. N. S., 6.